## ST. LOUIS SOUTHWESTERN RY. CO. v. HARVEY.

(Circuit Court of Appeals, Eighth Circuit. March 19, 1906.)

### No. 2,285.

1. MASTER AND SERVANT—NEGLIGENCE—ACTS OF SERVANT MUST BE WITHIN SCOPE OF HIS EMPLOYMENT AND IN THE BUSINESS OF MASTER IN ORDER TO CHARGE LATTER.

　　Two indispensable conditions of the liability of a master for the negligent acts of a servant are that they shall be within the scope of the latter's employment and that they shall be done in conducting the business of the master. If a servant step aside from the business of his master for never so short a time to do an act that is not a part of that business, the relation of master and servant is for the time suspended, and the acts of the servant during this interval are not the master's but his own.

　　[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1209, 1217–1224.]

2. SAME—LIABILITY OF MASTER NOT CREATED BY SERVANT'S USE OF HIS FACILITIES WITHOUT HIS CONSENT.

　　The use by a servant, in the commission of a tortious act and while pursuing his own affairs, of cars, engines, or facilities of the master, without the latter's consent, but which the servant could not have pro-

cured in the absence of the relation of master and servant, is insufficient to charge the master with liability for the acts of the servant.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant. § 1225.]

3. SAME—FACTS—DECISION.

A straw boss and some members of a gang of laborers, which was engaged in surfacing and repairing track, took a hand car and drove it to town about three miles south of their place of work and camp at about four in the afternoon. About eight in the evening some members of another gang. which was engaged in relaying the track near the place of work of the former gang, were taking some sick workmen to the town upon a hand car, when they collided with the first car which was returning without any light upon it. The rules and practice of the company prohibited the allowance of a hand car upon the track, without the permission of a foreman, but the men sometimes used them without his knowledge. The working hours of the men ceased at six in the afternoon. The foreman of the men on the dark car testified that they were not engaged in the business of the master, and that the hand car was not on the track with his knowledge or consent after six in the evening. *Held*, the acts of the men on the dark car after their hours of work had ceased were not within the scope of their employment, nor in the business of the company. and the latter was not liable for them.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1223–1225.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

W. T. Woolridge (S. H. West and F. G. Bridges, on the brief), for plaintiff in error.

Trimble, Robinson & Trimble, and J. H. Harrod, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. On March 3, 1903, two gangs of laborers were at work for the St. Louis Southwestern Railway Company, the defendant below, at a point about three miles north of Jonesboro in the state of Arkansas. The plaintiff below, Sam J. Harvey, was a member of a gang which was engaged in taking up old rails and laying new ones and the foreman of his gang was one Redding. The other gang was engaged in surfacing and repairing the roadbed about a quarter of a mile north of Redding's gang, and W. J. Bridges was its foreman. The hours of work for the men in these gangs were from 7 in the morning until 6 in the evening. It was contrary to the rules and practice of the company to permit a hand car upon the railroad track without the permission of a foreman. About four in the afternoon a hand car operated by a straw boss or assistant foreman and some members of Bridges' gang passed south towards Jonesboro. After the men in Redding's gang had completed their work for the day, and about 8 in the evening their foreman sent the plaintiff and four or five other laborers in charge of an assistant foreman upon a hand car to Jonesboro to carry some sick workmen. The plaintiff was in charge of a red light and a white light upon the front of the hand car. He placed the red light

on the car, sat down by the side of it, hung his feet over the front end of the car and held the white light upon one of his legs. The evening was dark and at a point about two miles north of Jonesboro they collided with the hand car in possession of the members of Bridges' gang which was coming north without any light upon it and the plaintiff's legs were caught between the cars and seriously injured. He brought this action against the company to recover damages upon the ground that he was injured by the negligence of those members of Bridges' gang who were operating the dark car. At the close of the evidence counsel for the defendant requested the court to instruct the jury to return a verdict in its favor. This request was refused, and this refusal is assigned as error.

Conceding, without considering or deciding the question, that the men upon the dark car belonged to the classes of servants for whose acts of negligence the master is liable under the statutes of Arkansas, the burden of proof was upon the plaintiff to establish the fact that at the time and place of the collision these men were running the car in their possession in the discharge of a duty of their employment as servants of the corporation. The first question for consideration in the case, therefore is, was there any substantial evidence at the trial sufficient to sustain a finding of the jury that this fact existed? It is not enough that there was evidence that these men were engaged in the business of the corporation during their working hours or at other times or places, but it was necessary to produce evidence that they were thus employed at the time and place of the collision. The finding of this fact required an affirmative answer to two questions which conditioned it, was there substantial evidence that the act of operating this car upon the railroad upon its northward trip from Jonesboro in the dark at 8 o'clock in the evening was within the scope of the duty assigned to these men under their employment? for if it was not the master was not liable for their acts in that regard although those acts were done during the time of their engagement about the business of their master. Bowen v. Illinois Central R. Co. (C. C. A.) 136 Fed. 306, 311–316, wherein a station agent while delivering a package at the window of his office shot the addressee, and the company was held to be exempt from liability because the act was not within the scope of his duty; Walker v. Ry. Co., 121 Mo. 575, 584–588, 26 S. W. 360, 24 L. R. A. 363, 42 Am. St. Rep. 547. The second query is, was there substantial evidence that the act of running this car upon the track at night without a light was done in the conduct of any of the business of the master? for if a servant step aside from the business of his master for never so short a time to do any act that is not a part of that business the relation of master and servant is for the time suspended and the acts of the servant during that interval are not his master's, but his own. Benson v. Chicago, St. P., M. & O. Ry. Co., 78 Minn. 303, 307, 308, 80 N. W. 1050; Baker v. Kinsey, 38 Cal. 631, 633, 99 Am. Dec. 438; Georgia Railroad Co. v. Wood, 94 Ga. 126, 21 S. E. 288, 47 Am. St. Rep. 146.

Nor does the fact that servants guilty of a tortious act make use of the master's cars, engines, or other facilities, which they could not have obtained in the absence of the relation of master and servant,

to commit it, while pursuing their own ends exclusively, charge the master with liability for their act in the absence of his knowledge or consent to such use. Chicago, St. P. M. & O. Ry. Co. v. Bryant, 65 Fed. 969, 973–975, 13 C. C. A. 249, 253–255, where a yardmaster took an engine and a passenger car upon the track of the railroad company at night after his hours of labor were over without the knowledge of his master, and caused a collision which killed some and injured others of those he was transporting for his and their purposes (Mitchell v. Crassweller, 13 C. B. 237); in which a carman whose duty it was to put the horses and cart of his master in his stable after the day's work was completed obtained the keys of the stable for that purpose, and then drove in another direction on his own business without the consent of his master, and on his return drove his master's horse and cart against, and injured a third person. The master was held to be exempt from liability for this injury (Cousins v. Railway Co., 66 Mo. 572); wherein the superintendent of the company took an idle locomotive from its roundhouse in the night and ran it 2½ miles for a doctor for a sick neighbor. On the way he carelessly drove the engine upon, and killed the plaintiff's mule, but the Supreme Court of Missouri held that the company was not liable for the damage. Morier v. Railway Co., 31 Minn. 351–353, 17 N. W. 952, 47 Am. Rep. 793; Campbell v. City of Providence, 9 R. I. 262; Garretzen v. Duenckel, 50 Mo. 104, 107, 111, 11 Am. Rep. 405; Chicago Consol. Bottling Co. v. McGinnis, 86 Ill. App. 38, 40; Snyder v. Railway Co., 60 Mo. 413, 419.

The evidence upon the questions whether or not the men upon the dark car were running north from Jonesboro at 8 in the evening with the consent of their master, within the scope of their employment, and in the business of their employer, was this: The plaintiff's witnesses testified that hand cars were not allowed upon the railroad track without the permission of the foremen, but that the men sometimes took and used them without their knowledge, that the hours of work of Bridges' gang were from 7 in the morning until 6 in the evening, that about 4 in the afternoon a straw boss and some men of his gang went to Jonesboro with a hand car, that the work in which Bridges' gang was engaged was surfacing the track, that the witnesses for the plaintiff did not know whether the men who used this car were then working for the company or not, and that the cars collided at 8 in the evening when the car with Redding's men was going south to carry some sick workmen, and the other car was coming north without any light upon it. Bridges testified that he had 19 men in his gang, and that some of them were not at work on the day of the accident, that he had four hand cars, and was using three; that he sometimes sent men on a hand car to Jonesboro to get tools, but whenever he did so he sent them at such times that they could come back to his camp by 6 in the afternoon; that he might have sent a car to Jonesboro on the day of the accident, but that if he had done so the men with it would have returned by 6 o'clock, that if he had sent them and they had not returned by 6 they would not have been in the service of the company thereafter during that night;

that he sent no car, and gave no permission for any car to go to Jonesboro on that day, and that if one went, it was without his knowledge or consent; that he knows he did not send a car to Jonesboro that day for tools, because his tools were sent to him at the camp; that he heard of the collision and injury the next day; that he does not remember sending out any car, or permitting any car to go to Jonesboro on that day, and that if he had sent a car, or had permitted one to go he would certainly have remembered it the next day after he heard of the accident. There is no other material evidence in the case upon these issues, and this testimony is insufficient to sustain a finding that the men on the dark car were either acting within the scope of their employment or transacting the business of the defendant at 8 in the evening when they were returning from Jonesboro and caused this collision. The scope of the duties of their employment was prima facie limited to surfacing and repairing the railroad track. The time of their engagement was from 7 in the morning until 6 in the evening. After the latter hour, and while they were not surfacing the track, they were presumptively without the service of their master, pursuing their own affairs exclusively. The facts that they could not have had possession of the hand car without the consent of the foreman, Bridges, or a violation of the rules of the company, and that Bridges might have sent them to Jonesboro for tools at 4 in the afternoon, are insufficient to overcome these presumptions, the fact, so suggestive of surreptitious use of the car, that they were running it in the night without lights, and the positive testimony of Bridges, the only witness in the case who knew that this car was not out after 6 on that evening with his knowledge or consent, and that if these men were operating it after that hour they were not then engaged in any part of the business of the company, but were attending to their own affairs exclusively. The insufficiency of the evidence upon these issues is fatal to the verdict, and renders the consideration of other questions in the case unnecessary.

The judgment below is accordingly reversed, and the case is remanded to the Circuit Court, with instructions to grant a new trial.