MARY E. HARTNETT, administratrix, *vs.* REUBEN B. GRYZMISH.

Suffolk.    December 8, 1913. — June 17, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Agency,* Scope of employment. *Evidence,* Presumptions and burden of proof, Of state of mind.

In an action for the conscious suffering of one who was run over by an automobile of the defendant, there was evidence tending to show merely that a chauffeur who was driving the automobile at the time of the accident was employed by the defendant and "took orders from everybody in the" defendant's family, that at the time of the accident he had been in the car to his home for a noon dinner and was proceeding from his home to the residence of the defendant, which was a mile beyond the place where the accident occurred, to take out the defendant's mother, that the defendant had not told him to use the automobile for the purpose of going to his dinner or for similar purposes, and that he never had told the defendant that he so used it and did not know that the defendant was aware of the fact that he did so. The assistant superintendent of the garage where the automobile was kept testified that "there was no limitation so far as the garage was concerned as to the rights of" the chauffeur "to take out the car at any time." The terms of the contract between the defendant and the chauffeur were not in evidence. *Held,* that there was no evidence

that the chauffeur was acting within the scope of his employment by the defendant at the time of the accident, because the only reasonable inference from the evidence was that the chauffeur was to procure his own meals, and that the time required to do so was his and not the defendant's.

In an action for personal injuries caused by an automobile of the defendant, where it appears that the defendant was not in the automobile at the time of the accident, the mere facts, that the defendant owned the car and that it was being driven by a chauffeur who was hired by him, do not warrant a finding that at the time of the accident the chauffeur was acting within the scope of his employment by the defendant.

At the trial of an action for personal injuries caused by an automobile of the defendant, where a question at issue is whether a chauffeur, who was hired by the defendant and was driving his automobile at the time of the accident, was at that time acting within the scope of his employment and where it appears that at the time of the accident the chauffeur was returning from his home, over a mile from his employer's home, where he had been for a noon meal, and the chauffeur has testified that the defendant never had told him not to use the automobile for the purpose of going to his noon meal and similar purposes, it is proper to exclude a question, asked of the chauffeur by the plaintiff, as to whether he was willing that the defendant should have known that he took out the car in order to go to his noon meal.

TORT, by the administratrix of the estate of John E. J. Hartnett, late of Boston, for the conscious suffering and death of the intestate alleged to have been caused by his being run over by an automobile of the defendant due to negligence of the chauffeur. Writ dated February 19, 1912.

In the Superior Court the case was tried before *Dana,* J. The circumstances under which Kravatz, mentioned in the opinion, testified, were as follows: The defendant was called as a witness by the plaintiff and had testified that on the day of the accident he owned only one automobile and that Kravatz "was in his employ at that time as chauffeur." The plaintiff's counsel then asked him, "Do you make any question that he was in the car, that he was operating the car that ran down Hartnett?" The defendant's counsel objected to the question and there was a long colloquy between the judge and counsel, from which it appeared that Kravatz was in the court room under summons by the defendant. The defendant's counsel suggested that the plaintiff put Kravatz on the stand for the purpose of asking him whether he was operating the car that ran over Hartnett. With reluctance, at the suggestion of the judge, the plaintiff's counsel did so, after the defendant's counsel had said, "I will waive my rights of cross-examination and examine him direct." It was

while Kravatz was being examined by the defendant's counsel that his testimony, described in the opinion, was given.

Other material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant and reported the case for determination by this court, with the following stipulation: "If the plaintiff was entitled to go to the jury on any ground whatsoever on all the evidence in the case and the issues raised by the pleadings, there shall be judgment entered for the plaintiff in the sum of $3,500. In case that the action should not have been submitted to the jury on the evidence presented, there shall be judgment entered for the defendant, unless any of the plaintiff's exceptions to the admission or rejection of evidence are sustained, in which case there shall be a new trial."

*W. R. Sears,* (*E. O. Proctor* with him,) for the plaintiff.

*E. I. Taylor,* for the defendant.

HAMMOND, J. This is an action of tort brought by the administratrix of the estate of one Hartnett, to recover for his injuries and death caused by a collision between a bicycle ridden by him and an automobile owned by the defendant, upon a public street about half past one o'clock in the afternoon of October 13, 1911.

There can be no doubt that upon the evidence the questions of the due care or negligence of Hartnett and the chauffeur were for the jury. The only remaining question is whether at the time of the accident the latter was the defendant's servant acting within the scope of his employment; and the burden of showing that he was rested upon the plaintiff.

Upon this question it appeared, or there was evidence tending to show, that the automobile was owned by the defendant and was registered in his name, and that Kravatz, the chauffeur, was in his employ as such at the time of the accident. Kravatz testified that at that time he was not in the employ of the defendant, but of his (the defendant's) mother; that she hired him and paid him; that he "would take orders from Mr. Reuben Gryzmish [the defendant] if he gave [the] witness any orders, but he never did give any orders. Took orders from everybody in the family, not particularly him or nobody [*sic*] else; . . . took orders from everybody that rode in the car and from . . . [the defendant] just as much as from any other member of the family." The

assistant superintendent of the garage in which the car was kept testified that Kravatz was accustomed to take out the car "about three times a day for some weeks or possibly months" preceding the day of the accident; that "there was no limitation so far as the garage was concerned as to rights of Kravatz to take out the car at any time;" that he had seen the defendant ride in the car not oftener than once a week while the car was kept in the garage, and that he "could not say that any one else except Kravatz preceding the thirteenth day of October took that car from the garage." There was no evidence that any one other than Kravatz ever ran the car, or that he was in the employ of the defendant for any other purpose. In the registration certificate of the car the residence of the defendant is given as "No. 1089 Boylston Street, Boston, Mass.," which, as Kravatz testified, was the place where the defendant's mother resided; and on this and the further evidence of the chauffeur as to the family, the inference may be fairly drawn that the defendant and his mother were members of the same household. There is no evidence as to what was the business of the defendant, or indeed whether he had any business.

The only evidence of the general movements of the car immediately preceding the accident and of the purpose for which he was then using the car came from Kravatz, who testified in substance that on that day he started out from the garage with the car at about twelve o'clock, noon; that he went from there directly to his house on Wayland Street, in Roxbury, near Grove Hall; that after dinner he started to go to 1089 Boylston Street, to meet the defendant's mother at a quarter past two to take her out; that while travelling for that purpose, and being at or near the corner of Tremont and Whittier Streets, which in his opinion was a little over a mile from 1089 Boylston Street, the accident occurred; that he once before had used the car to go to dinner; that he did not steal the car that day; that he had used the car to go into town to buy supplies for the car; that neither the defendant nor his mother ever told him (the witness) not to use the car for the purpose of going to dinner and for similar purposes; that he never told the defendant that he used it for that purpose and that he did not know that the defendant ever knew of such use.

It does not appear what were the terms of the contract between

the defendant and Kravatz. It is not contended by the plaintiff that Kravatz lived in the family of the defendant, or that the latter was to furnish the former with dinner. Indeed the only fair inference from the testimony is that Kravatz, who lived at least more than a mile from the residence of the defendant, was to procure his own meals, and that the time required for that purpose should be his and not the defendant's. The case varies materially from *Reynolds* v. *Denholm,* 213 Mass. 576, and *McKeever* v. *Ratcliffe, ante,* 17.

If the evidence of the chauffeur as to the purpose for which he was driving the car at the time of the accident is to be believed, then the plaintiff has failed to show that he was at that time acting within the scope of his employment, but has shown rather that he was acting for his own private purpose.

It is urged however by the plaintiff that in view of the peculiar circumstances under which Kravatz was called and his examination conducted she had the right to ask the jury to disbelieve him as to the purpose for which he was driving the car at the time of the accident, and that if they did disbelieve him the other evidence warranted a verdict for her.

But even if the evidence of Kravatz be stricken out, then there is absolutely no evidence as to the purpose for which he was driving. Whatever may be the rule elsewhere (see *Stewart* v. *Baruch,* 103 App. Div. (N. Y.) 577), it never has been the rule here that simple proof of the ownership of the car by the defendant and that the chauffeur is his servant makes out a *prima facie* case for the plaintiff on the question whether on an occasion like that in the present case the chauffeur was acting within the scope of his employment. See *Reynolds* v. *Denholm,* 213 Mass. 576, and *Bourne* v. *Whitman,* 209 Mass. 155. Without the evidence of the chauffeur as well as with it the case of the plaintiff falls; and in neither aspect of the case was the defendant called upon for explanation.

There was no error in the rejection of the question put to Kravatz as to whether he was willing that the defendant should have known that he took out the car in order to go to dinner.

In accordance with the terms of the report the entry is

*Judgment for the defendant.*