[Civ. No. 2789. First Appellate District, Division Two.—June 24, 1919.]

## ARTHUR GOUSSE, Respondent, *v*. L. P. LOWE, Appellant.

[1] MASTER AND SERVANT—TORT OF SERVANT WHILE ENGAGED IN INDIVIDUAL BUSINESS—LIABILITY OF MASTER.—If a servant abandons or departs from the business of his master and engages in some matter suggested solely by his own pleasure or convenience, or pursues some object which relates to an end or purpose which may be said to be the servant's individual and exclusive business, and, while so engaged, commits a tort, the master is not answerable, although he is using his master's property, and although the injury could not have been caused without the facilities afforded to the servant by reason of his relations to his master.

[2] ID.—TAKING MASTER'S MACHINE ON PERSONAL TRIP—WHEN TRIP COMPLETE.—Where a servant takes his master's machine for a junketing or a business trip of his own, the trip is not complete until his return to the point of departure, or to a point where in the performance of his duty he should be.

[3] ID.—SCOPE OF EMPLOYMENT—QUESTION FOR JURY—WHEN DIRECTED VERDICT PROPER.—While ordinarily the question of whether

---

1. Responsibility of owner when automobile is being used by servant or another for his own pleasure or business, notes, 1 L. R. A. (N. S.) 235; 9 L. R. A. (N. S.) 1033; 14 L. R. A. (N. S.) 216; 21 L. R. A. (N. S.) 93; 26 L. R. A. (N. S.) 382; 33 L. R. A. (N. S.) 79; 37 L. R. A. (N. S.) 834; 47 L. R. A. (N. S.) 662; L. R. A. 1916A, 957.

or not the act was within the scope of the servant's employment should be submitted to the jury, where the only evidence is that at the time of the injury the servant was upon a trip for his own purposes contrary to his master's orders, a motion for a directed verdict should be granted. It is only where reasonable men may differ in regard to the facts that a case should go to the jury. If the facts are admitted, or are susceptible of but one meaning, it becomes the duty of the judge to declare the law upon the admitted facts.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Reversed.

The facts are stated in the opinion of the court.

Cooley & Lachmund and Winfield Dorn for Appellant.

John Ralph Wilson, Fred L. Berry and Chas. B. Morris for Respondent.

BRITTAIN, J.—The defendant appeals from a judgment for $1,250 damages for injuries to the plaintiff, found by a jury to have been caused by the negligent operation of an automobile, owned by the defendant and driven by his chauffeur.

The appellant argues that the physical facts are such as to demonstrate the contributory negligence of the plaintiff, but as there is evidence to the contrary, the finding of the jury is conclusive. Error is claimed in rulings of the court concerning certain questions asked of jurors and of the plaintiff, the purpose of which, it is argued, was to suggest that the suit was being defended by an insurance carrier of the defendant. The particular questions do not appear to have been objectionable. The jury was instructed to disregard the answers, and if error were committed it was of such a character as not to warrant the reversal of the judgment.

Objection is made to the giving and refusal to give certain instructions upon the rule of *respondeat superior.* The attack upon them is the same as that upon the ruling of the court in denying nonsuit and in refusing to instruct the jury to find for the defendant. The judgment must be reversed, because under the admitted facts the case is within

the rule announced by Chief Justice Holt: "No master is chargeable with the acts of his servant, but when he acts in execution of the authority given by his master." (*Middleton* v. *Fowler,* 1 Salk. 282; *Baker* v. *Kinsey,* 38 Cal. 634, [99 Am. Dec. 438].)

Stated most strongly for the plaintiff and respondent, the facts in regard to agency are as follows: When the chauffeur was employed he was instructed never to use the car for any purpose of his own. The car was kept at his employer's residence, on Washington Street, in San Francisco, four or five blocks westerly from a public garage, near Presidio Avenue and Sacramento Street, where the defendant's gasoline and supplies were ordinarily purchased. The chauffeur did not board at the employer's house, and got luncheon near the public garage. Ordinarily when supplies were needed he asked his employer's wife for permission to take the car to the public garage for the supplies when he went to his luncheon. He was under general instructions to report at the house after luncheon at 2 o'clock. On the day of the accident the chauffeur did not ask permission to take the car to the public garage, but, needing gasoline, he took it there at the noon hour. He left the car at the public garage while he took his midday meal and on his return purchased gasoline and filled the tires with air. Under his general instructions it was then his duty to drive the car four or five blocks westwardly to his employer's house to report there for duty at 2 o'clock. This duty he did not perform.

The chauffeur was having an overcoat altered at a tailor-shop at Sutter and Montgomery Streets, some two and a half miles east of the garage. Wholly for his own purposes he desired to go to the tailor's. He looked at his watch and concluded that if he went down town on the street-car he could not get back to the garage in time to take the motor car to his master's house by 2 o'clock. In disobedience of his instruction never to use the car for his own purposes he abandoned his duty to drive the car west four blocks and drove it easterly about two and a half miles. At the tailor-shop he attended to his business and started westerly. He picked up a friend, intending to leave him near the public garage, and on the way out, while still more than a mile east of the garage, at Bush and Taylor Streets, the car he was driving collided with the plaintiff's machine

under circumstances which the jury found were caused by the chauffeur's negligence. Upon these facts it is contended on behalf of the respondent that there was a mere temporary deviation from the line of the servant's employment, that after his visit to the tailor-shop it was his duty to take the car to his master's house by 2 o'clock, that he was performing that duty, and, in either case, that the question of whether or not he was acting within the scope of his agency at the moment of the accident was one of fact to be determined by the jury.

In the opinion in a case which, in the respondent's brief, is not sought to be differentiated in principle from this, the court quoted at length from a note in 35 Am. Dec. 192, the general rules that govern the master's liability. [1] Upon the question presented here the quotation was that "if a servant abandons or departs from the business of his master and engages in some matter suggested solely by his own pleasure or convenience, or pursues some object which relates to an end or purpose which may be said to be the servant's individual and exclusive business, and, while so engaged, commits a tort, the master is not answerable, although he was using his master's property and although the injury could not have been caused without the facilities afforded to the servant by reason of his relations to his master." Continuing, the writer of the opinion said: "With these rules no one quarrels. The difficulty has been to determine whether they are applicable to a given state of facts, and upon a question of this kind opinions will always differ. To take the case in hand, it would be easy to cite decisions that hold the master to be liable under similar or analogous facts, and it would be just as easy to cite cases . . . in which his liability has been denied." The court ordered judgment for the defendant, notwithstanding the verdict for the plaintiff. (*Patterson* v. *Kates,* 152 Fed. 481.) So, in this case, quotations are made in the respective briefs from decisions and text-books which seem applicable on one side or the other to the facts now under consideration. No amount of legal reasoning and no multiplication of comments upon other facts can change the facts in this case. Upon an errand of his own, the man left the garage and had not returned to within a mile of it when the collision occurred. He took his master's automobile, not in fur-

therance of any business of the master, but solely because it was a quicker means of conveyance than a street-car, because without using it he would not have had time to attend to his private business. The facts are not unlike those in *Patterson* v. *Kates, supra,* and the rule of law declared in that case is not only applicable but is controlling. This is not the case of a mere slight deviation from the line of duty, but a departure for the purposes of the servant.

In a very few cases in other states when the tort occurred on the homeward journey of the disobedient servant the master has been held liable, but the great current of authority, in this country and in England, is against those isolated cases. (*Danforth* v. *Fisher,* 75 N. H. 111, [139 Am. St. Rep. 670, 21 L. R. A. (N. S.) 93, 71 Atl. 535] ; *Colwell* v. *Aetna etc. Co.,* 33 R. I. 531, [82 Atl. 388] ; *Reynolds* v. *Buck,* 127 Iowa, 601, [103 N. W. 946] ; *Riley* v. *Roach,* 168 Mich. 294, [37 L. R. A. (N. S.) 834, 134 N. W. 14] ; *Ludberg* v. *Barghoorn,* 73 Wash. 476, [131 Pac. 1165] ; *Chicago etc. Ry. Co.* v. *Bryant,* 65 Fed. 969, [13 C. C. A. 249] ; *St. Louis Ry. Co.* v. *Harvey,* 144 Fed. 806, [75 C. C. A. 536] ; *Hartnett* v. *Gryzmish,* 218 Mass. 258, [105 N. E. 988] ; *Solomon* v. *Commonwealth Trust Co.,* 256 Pa. St. 55, [100 Atl. 534] ; *Mitchell* v. *Crassweller,* 13 Com. B. 237 ; *Storey* v. *Ashton,* L. R. 4 Q. B. 476.) They cannot be supported upon any sound reason. **[2]** If the servant takes his master's machine for a junketing or a business trip of his own, the trip is not complete when he reaches a point miles away from the place where the machine ought to be. The servant is upon his own trip until his return to the point of departure, or to a point where in the performance of his duty he should be. No clearer statement of the rule and the reasons upon which it is based has been made than in the opinion written by Mr. Justice Mitchell of the supreme court of Minnesota: "The liability can only occur when that which is done is within the real or apparent scope of the master's business. It does not arise when the servant steps outside of his employment to do an act for himself, not connected with his master's business. Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act in the doing of which he is guilty of negligence in the course

of his employment. A master is not responsible for any act or omission of his servant which is not connected with the business in which he serves him, and does not happen in the course of his employment. And in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. ·If the servant was, at the time when the injury was inflicted, acting for himself, and as his own master *pro tempore,* the master is not liable. If the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities." (*Morier* v. *St. Paul etc. Ry.,* 31 Minn. 351, [47 Am. Rep. 793, 17 N. W. 952].)

[3] While ordinarily the question of whether or not the act was within the scope of the servant's employment should be submitted to the jury, in this case the only evidence was that at the time of the injury the servant was upon a trip for his own purposes contrary to his master's orders. It is only where reasonable men may differ in regard to the facts that a case should go to the jury. If the facts are admitted or are susceptible of but one meaning, it becomes the duty of the judge to declare the law upon the admitted facts. Under the facts in this case, the motion for a directed verdict should have been granted. There was no dispute of fact to be submitted to the jury.

Judgment is reversed.

Langdon, P. J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 21, 1919.

All the Justices concurred.