# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed October 24, 1927.

B. T. SENEY
VS.
AARON KAUFMAN.

*Edward D. Martin* for plaintiff.
*Walter V. Harrison* for defendant.

O'DUNNE, J.—

The *law* involved in this case is simple and elementary. The master is liable for the acts of his agents done within the scope of his authority.

The *application* of it, however, to the facts of this case, present a *very nice question* in determining whether it was a case of permissive use for the sole benefit of the chauffeur, or a case of *"respondeat superior."*

Defendant and his wife had been driven by defendant's chauffeur to the Clover Club for supper, where they customarily went about three times a week. They arrived there about 6.15 P. M. and the chauffeur was told to *"go get his supper and be back for them at 7.30 P. M."* The master knew he regularly went home to his meals, and that his home was two miles in the west of the city. The master did not board or supply meals to the chauffeur, but permitted him to use his car for the purpose of going home to his meals. On his way home on the night in question, he negligently ran into and nearly demolished the car of the plaintiff, also injuring the plaintiff in his knee.

The Maryland doctrine, unlike the Massachusetts doctrine, recognizes the

prima facie liability of the master for injuries occasioned by his car, found to be operated at the time by his chauffeur. This prima facie *presumption* is rebuttable by affirmative evidence that the chauffeur at the time of the accident was not *engaged* in his *master's undertaking.*

The question here presented is one of fact and of law, viz: does the evidence as to the *nature* of the use at the time of the accident rebut this presumption and establish an independent and permissive use *for the sole benefit of the chauffeur?* I think not.

I find no Maryland case sufficiently in point on the facts to be controlling of the question at bar. In this day of the almost universal use of automobiles, it seems to me public policy should require the establishment of *a very clear case of permissive use for the sole benefit of the chauffeur*, before the master should be relieved of his general responsibility for the use of his car by his agent. Certainly, if he had hit the car in question *on his way back from supper* he would have been in the *very act* of calling for his master in pursuance of his master's orders. The driver of an automobile must be in good trim and fit condition to safely conduct his master (and his master's wife) to whatever may have been their destination after leaving the Clover Club, and it was somewhat to the general interest of the safety of the master to know that his driver was fed and rested and fit for whatever may have been his night's assignment for the operation of the car in the further conduct of himself and his wife to their ultimate destination—as to which the evidence in this case is silent. Whether he was to drive them on that night to New York, or merely conduct them to their home, we do not know. They might at any moment make plans for a *long drive* after supper. The master was interested in the servant being in fit condition for whatever his orders for the evening might be. *He had expressly directed him to use the car to go to supper*, knowing that he was going home two miles to his supper, and without the car could not well have been back in an hour and a quarter from the time he was sent, 6.15 P. M., to call for them at 7.30 P. M.

I have found and read a great many cases, in addition to all those cited by counsel on both sides. Many of them, for one reason or another, seem not to be quite in point, and easily distinguishable.

The three following, out of State cases, I think sustain the general views I entertain, and following the reasoning therein, and upon general principles, I find for the plaintiff. These cases are:

(1922) Kish vs. California State Automobile Assn., 212 Pac. 27 (Cal.) (not cited by counsel).

At page 28:

(2) "In determining whether a particular act is within the scope of the servant's employment, it is obvious that if the servant is directly engaged in the duties which he was employed to perform, or if his acts are directly producing the result desired by the master, that the servant is at that time in the course of his employment. It is not, however, necessary in order to hold the master liable, that the servant shall be engaged in the direct performance of the thing which is the ultimate object of his employment, for also included within the scope of the servant's employment are those acts which incidentally or indirectly contribute to the service."

(1919) Deque et al. vs. George D. Salmon Co., 106 Atl. 379 (New Jersey) (cited by counsel):

"Where a chauffeur is, for the purpose of enabling him to reach his work earlier, permitted to drive the master's automobile to and from his home, the relation of master and servant continues during such trips, so that the master is liable for injuries resulting from negligent driving."

(1909) Ferris vs. McArdle, 106 Atl. 460, 461 (cited by plaintiff's attorney):

"The third point raised on this branch of the case is that the servant was not in the service of the defendant when the accident happened. The evidence relating to this is that the duty of the driver was to drive and care for the auto; that he did not live with his master, and that when he was kept in service until late in the day his habit was to drive to his home, get his supper, and then take the auto to the garage and wash it; that if he had time to wash it before supper he drove directly to the garage and did so, and that this method was known to, and acquiesced in, by his master; that on the day in question he had been driving defendant's wife, and left

her at her residence late in the afternoon, and on his way to the garage went to his home to get his supper, and before he reached his home the accident happened.

"There was no express direction to go to his home for supper on the night in .question; but the driver had done the same thing many times under like circumstances, to the knowledge of the master and without his objection. In fact, he testified that he accepted this method as a matter of course, and a jury might infer from such a course of conduct, if sufficiently continued, that it had been accepted by both parties as a part of the consideration .of the employment. The master had a right to expect, when he kept his servant working so late, that he would do what he had been accustomed to do under like circumstances, and yet gave no directions to the contrary, and a jury would be justified in inferring from this that the servant had been authorized by the master to stop for his supper on has way to the garage, and to use the auto for that purpose. It is not a single digression unknown to the master but a course of conduct well known to the master, and which he must be considered to have thought beneficial to him, the exercise of which he entrusted to the servant's discretion. We find no error in the refusal to non-suit or direct for this reason."

The following two cases from Massachusetts indicate how closely the line is drawn, one decided in favor of the plaintiff and one for the defendant, *both being chauffeurs going to meals.*

(1914) Hartnett vs. Gryzmish, 218 Mass. 258, at 262:

Mass. rule does not allow presumption of general employment from car operated by owner's chauffeur.

(Went from garage to his house for dinner and after dinner was to meet defendant's mother. On the way accident.—Never told to use the car: never forbidden its use—Fair inference he was to board himself, procure his own meals.)

If the evidence of chauffeur is accepted as to the purpose for which he was using car, "then the plaintiff has failed to show that he was at the time acting within the scope of his employment, but has shown rather that he was acting for his own private purpose."

(1925) Walsh vs. Feinstein et al., 146 N. E. 355 (Mass.) :

At page 356:

(2) "* * * On the day of the accident he was instructed to go to South Boston and get some goods at the Standard Supply Company. When he got to the place the men 'were on their lunch hour and the place was closed. He then started to drive to his mother's house, three-fourths of a mile beyond, to get his dinner, and was then going back to the Standard Supply Co. to get the goods. The accident happened before he reached his mother's house. The jury on the evidence was warranted in making the specific finding that Stafford on that particular day was instructed to use the car to go to his dinner, and in further finding that the use of the car was for the financial gain of the employer and not for the mere convenience or pleasure of the driver. The evidence was ample that the instructions to use the automobile to go to dinner were authorized and approved by the defendant."

Entertaining the general views expressed, as well as on the strength of the reasoning in some of the out of State cases above cited. I, therefore, overrule the prayers for an instructed verdict for the defendant, and find a verdict for the plaintiff, and assess the damages at $600, taking into consideration the repairs to the damaged car of $358.65, the $80 item referred to in the evidence, the $22 bill to one physician and $11 to another, a suit of clothes and a hat, and personal injury to the knee and consequent suffering, and disregard all claim of permanent injury.

Verdict for plaintiff and damages assessed at $600.

With exceptions to each side on all adverse rulings on prayers or other matters.