FREDERICK B. RICHMOND *vs.* BYRON READ.

MARCH 15, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Actions. Money Had and Received.*

To support an action for money had and received there must be some privity between the parties in relation to the money sought to be recovered. This privity may be express or implied, and if one has the money of another, which in good conscience he has no right to keep, the law will imply a promise in such case, but where there are two claimants to the same fund, and one of them is recognized as being entitled to it by the person from whom it is due and is paid, the other cannot sue him to recover the money, for having received the money under a claim of right in himself, the law will not imply a promise by him to hold the money for the use of the other claimant.

*(2) Actions. Burial of Soldier.*

Where a town has paid under the provisions of Gen. Laws, 1909, cap. 105,
§§ 1, 2, and 4 (of the burial of honorably discharged soldiers), the sum
allowed for the expense of a headstone, to defendant, the person designated
by the town council to attend to the interment of a soldier under said chapter,
the court cannot determine, in an action for money had and received, brought
against defendant by a third party who claimed the right to provide the
headstone, (to which action the town is not a party), whether or not the
town has paid the money to a person not entitled to the same.

ASSUMPSIT.  Heard on exceptions of plaintiff, and over-
ruled.

DUBOIS, C. J.  This is an action of assumpsit for fifteen
dollars, alleged to have been had and received by the defend-
ant in March, 1909, for the use of the plaintiff, in erecting a
headstone at the grave of Bradford Gavitt.  The action
was brought in the District Court of the Fourth Judicial
District and thence was certified to the Superior Court upon
claim of jury trial.  Upon trial in the Superior Court the
jury returned a verdict for the defendant by direction of the
court.  To this ruling of the court the plaintiff took an
exception, and also duly filed his motion for a new trial,
which was denied by the justice of the Superior Court who
presided at the trial.  Whereupon the plaintiff duly ex-
cepted and has prosecuted his bill of exceptions before this
court.

The question raised is whether in the circumstances of
the case the action will lie.  The facts material to the present
consideration are as follows:  Bradford Gavitt aforesaid,
an honorably discharged soldier of the civil war, died in the
town of Coventry, January 27, 1909, without leaving means
sufficient to defray his necessary funeral expenses; he was
therefore buried by the defendant under the provisions of
Gen. Laws, 1909, cap. 105, whereof Sections 1, 2, and 4 read
as follows:  "Section 1.  Whenever any person who served
in the army, navy, or marine corps of the United States
during any period of war, and was honorably discharged
therefrom, shall die within this state without leaving means

sufficient to defray necessary funeral expenses, he shall be buried and the expenses thereof paid in the manner hereinafter provided.

"Sec. 2. The town council of any town and the board of aldermen of any city, shall annually designate some proper person, other than those designated by law for the care of paupers or the custody of criminals, who shall cause to be interred the body of any such honorably discharged soldier, sailor, or marine who may not have left sufficient means to pay his funeral expenses; and in case the deceased has relatives or friends who desire to conduct the burial and who are unable or unwilling to pay the charge thereof, they shall be allowed to conduct the funeral, and the cost of said interment shall be paid to them or their representatives by the town or city treasurer upon due proof: *Provided, however,* that claim for payment of the same under the provisions of this chapter shall be made within sixty days after the decease of such honorably discharged soldier, sailor, or marine; and provided that the whole expense of such funeral shall not in any case exceed the sum of thirty-five dollars."   . . .

"Sec. 4. The grave of any deceased soldier, sailor, or marine who may be buried under the provisions of this chapter shall be marked by a headstone containing the name of the deceased, and, if possible, the organization to which he belonged or in which he served. Such headstone shall cost not more than fifteen dollars, and the expense of such headstone and burial shall be a charge upon and shall be paid by the town or city in which the said soldier, sailor, or marine may have died."

The defendant was the person properly designated by the town council of said town to cause to be interred the body of said soldier and for the expense of the funeral the sum of thirty-five dollars was allowed and paid to him by the town of Coventry. About March 17th of the same year the town also paid him the sum of fifteen dollars for a headstone for the grave of said soldier, and thereupon the defendant ordered one James Ray to prepare and suitably mark according to law

and set up at the grave of said soldier before Memorial Day, 1909, an appropriate headstone and promised to pay him the sum of fifteen dollars therefor.   Said James Ray accordingly did prepare and mark the same and deliver it at the grave of said soldier in the month of May, 1909, before Memorial Day, and was then and there ready to properly set the same, but was forbidden to do so by the niece of the deceased, who is also the plaintiff's wife, who owns or controls the burial lot wherein said Bradford Gavitt is buried.   The defendant paid said sum of fifteen dollars for said headstone to said James Ray on or about June 1, 1909.   The reason why the wife of the plaintiff forbade the erection of the stone so prepared and delivered by James Ray at the grave of her uncle was that she had caused her husband to prepare, furnish and set a stone at said grave, at an expense of twenty-five dollars, which stone was not only more expensive but, in her estimation, more suitable for that purpose and she claims that she was authorized to order the stone and that her husband is entitled to receive the sum of fifteen dollars paid by the town to the defendant to be applied toward the payment of the stone furnished by him at her request.   The plaintiff did not nor did his wife notify the town or the defendant of her intention to furnish a stone for the grave of her uncle, before the stone prepared by Ray had been ordered by the defendant and paid for by the town.   In fact the first notice that either Mr. Ray or the defendant had that the plaintiff was intending to furnish such a stone was when Mr. Ray brought the stone prepared by him to the grave to set it up. Neither did the plaintiff or his wife know that Mr. Ray was preparing a stone for the grave of her uncle under orders from the defendant.

(1)     The question to be decided is not which of the two claimants is entitled to the fifteen dollars appropriated by the town for the purpose, but whether the defendant received the money in question for the use of the plaintiff.   To support an action for money had and received there must be some privity existing between the parties in relation to the money

sought to be recovered.   This privity may be express or implied.   If one person has the money of another, which in good conscience he has no right to keep, the law will imply a promise to pay it over.   See 27 Cyc. 857, A. and cases cited. But where there are two claimants to the same fund, and one of them is recognized as being entitled to it by the person from whom it is due, and is paid, the other cannot sue him to recover the money, for the reason that, having received the money under a claim of right in himself, the law will not imply any contract or promise by him to hold the money for the use of the other claimant, or to pay it over to him, and therefore there is not, under the circumstances, any privity of contract on which to found the action.   27 Cyc. 859, C. and cases cited.   Moreover, it would not be proper to determine, in an action of this kind to which the town of Coventry is not a party, whether or not the town had paid the money to a person who was not entitled to receive the same.   For these reasons we are of the opinion that the action was improperly brought.

The plaintiff's exceptions are therefore overruled, and the case is remitted to the Superior Court, with direction to enter judgment on the verdict.

*Lewis A. Waterman, Ernest P. B. Atwood,* for plaintiff.
*Quinn & Kernan,* for defendant.

---

LEON S. COLWELL *vs.* ÆTNA BOTTLE & STOPPER COMPANY.

MARCH 15, 1912.

PRESENT: Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Master and Servant.   Scope of Employment.   Automobiles.*

A servant of defendant had been ordered to take a car from one garage of defendant to its other garage, to there wash the car and put it up for the night.   After he had driven the car to the garage as directed, without permission or authority from defendant and against its express general orders, he took the car to carry another employee to his home, and after driving to a restaurant for his supper was returning to the garage when the accident occurred:—

*Held,* that the servant was not acting within the scope of his employment, and defendant was not liable for injuries caused by his servant's negligence while acting for himself.

*(2)   Master and Servant.   Machine dangerous per se.*

*Held,* further, that an automobile is not an instrumentality dangerous *per se,* thereby rendering a master liable for injuries resulting from the negligence of the servant, while riding for his own pleasure, and not upon the master's business.

*(3)   Master and Servant.   Scope of employment.*

*Held,* further, that Gen. Laws, 1909, cap. 86, relating to motor vehicles, has not changed the common law rule affecting the liability of a master for acts of a servant outside the scope of his employment.

*(4)   Master and Servant.   Evidence.   Witnesess.*

Where a plaintiff calls the servant of a defendant for the purpose of showing, his employment by defendant at the time of the accident, so as to show defendant's liability as based on his servant's negligence, the defendant may properly examine the servant fully, as to the nature of the acts done by him at that time and prior thereto, to ascertain the truth of the situation as to the nature of the servant's acts in relation to the use of the instrumentality causing the accident.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff, and overruled.

PARKHURST, J.   This is an action of trespass on the case for negligence brought in Providence county and tried before a justice of the Superior Court and a jury in March, 1911, resulting in the direction of a verdict for the defendant by the court, after the close of the plaintiff's case, no evidence being offered by defendant.

The essential facts brought out from the plaintiff's witnesses are, in substance, that on August 30th, 1910, about nine o'clock P. M., the plaintiff was driving his automobile west on Washington street, Providence, and at the intersection of Jackson street his automobile was in collision with an automobile owned by the defendant, which was being driven north on Jackson street by one William H. H. Thornton, who was in the general employ of the defendant. Thornton was called as a witness by the plaintiff and in direct examination testified that he was a licensed chauffeur and that he was running the automobile, which was in collision with plaintiff's automobile, causing the accident complained of and that he was on the day of the accident employed by the defendant.   In cross-examination, Thornton

testified that he had been ordered by the manager of the defendant to take this car from its garage on Peck street to its other garage on Bradford street, both in Providence; that after he got to the Bradford street garage, it was his duty to wash the car and put it up for the night at that place; that he did drive to the Bradford street garage as ordered, arriving there about 7:30 P. M.; that instead of running his car into the garage, washing it and leaving it there for the night, he, without permission or authority from the defendant and against its express general orders, took the automobile and ran it off in another direction, to carry another of the defendant's employees to his home on Potter avenue, at said employee's request; that after leaving said other employee at his home on Potter avenue, he, Thornton, then went down to a restaurant on Westminster street and stopped there to get his own supper; and that after going into the restaurant and getting his supper, he again boarded the machine and drove it down Westminster street, and through Jackson street on his way to the Bradford street garage; and that the accident occurred, when Thornton was going to the Bradford street garage for the second time, on Jackson street at the intersection of Washington street.

At the close of the plaintiff's testimony the defendant also closed its case and moved for a direction of a verdict for the defendant, which motion was granted by the court. The plaintiff brings the case before this court upon his exceptions to the ruling of the justice presiding at the trial in allowing the defendant to cross-examine Thornton in the endeavor to show that he was not as a matter of fact engaged in the defendant's business, but was engaged on matters of his own, at the time of the accident, and in directing a verdict for the defendant, on the ground that at the time of the accident the chauffeur was not engaged in the defendant's service, but was acting for himself.

The plaintiff's first seven exceptions relate to the rulings of the court below in permitting certain questions asked in

cross-examination of the chauffeur by the defendant's attorney for the purpose aforesaid, to be answered.  The said exceptions are not mentioned in the brief filed on behalf of the plaintiff, nor were they pressed in argument before this court; and we do not understand that the plaintiff relies upon them.  As the plaintiff called the chauffeur for the purpose of showing that, at the time of the accident, he was in the service of the defendant, so as to show the defendant's (4) liability, as based upon his servant's negligence, it was proper that the defendant should be allowed to examine him fully as to the nature of the acts done by him at that time and prior thereto in order to get at the truth of the situation as to the nature of the chauffeur's acts in relation to the use of the automobile.  In the case of *Quigley* v. *Thompson*, 211 Pa. St. 107 (1905), where the same question as to the propriety of such cross-examination was raised on facts very similar to those in the case at bar, the court says (p. 108): "The only question raised by this appeal that need be considered is whether the fact upon which a non-suit was based was developed by an improper cross-examination of the plaintiff's witness.  The action was to recover damages for injuries caused by being struck by the defendant's motor car.  The plaintiff called as his witness the chauffeur, who at the time of the accident was operating the car, and examined him at length to show that at that time he was in the employ of the defendant, and to identify the car by proof of its number, size, equipments and general appearance.  On cross-examination this witness was asked whether at the time of the accident he was not using the car for his own purposes and in violation of the orders of defendant.  He answered under objection: 'I was operating the machine for my own personal use on an errand for myself.  Mr. Thompson didn't know anything about it whatever.  I had no orders from him.  I took it out, breaking one of the rules, which I had no business to do.' "  .  .  .

"The whole trend of the examination in chief of this witness was to establish facts and circumstances which

would make the defendant answerable on the ground that the negligence alleged was that of his servant acting within the scope of his employment. It was competent in cross-examination to develop by the witness the fact, which qualified his testimony, that at the time of the accident he was using the machine in the prosecution of his own business and not in the business of his employer."

We are of the opinion that the examination was proper, and the first seven exceptions are overruled.

(1)    The eighth exception is to the ruling of the court in directing a verdict for the defendant on the ground above set forth. The plaintiff contends that the testimony should have been submitted to the jury on the question whether or not at the time of the collision, the servant and agent of the defendant corporation was acting within the scope of his employment in his master's business or on his own private business; and further contends that an automobile is an instrumentality, dangerous *per se*, and that, if the master intrusts such a machine to his servant for use upon a public highway and injury results from the negligence of the servant, the master is liable. But the cases cited in support of those contentions, depend upon facts and circumstances, so varied and so different from the facts of the case at bar, that we do not deem it necessary to review them, as in our opinion, such a review would unduly extend and encumber this opinion. We think the great weight of authority hereinafter cited completely disposes of both the above contentions, and adequately supports the ruling of the Superior Court in directing a verdict for the defendant. We are of the opinion that the testimony of the chauffeur as developed in cross-examination above referred to and approved, and which stands upon the record, uncontradicted, and unshaken upon further redirect examination, and which is in no way unreasonable or inconsistent, shows a state of facts which leads to the conclusion that, at the time of the accident, the defendant's servant was not acting within the scope of his employment. When he first arrived at the

garage on Bradford street it was his duty, then, to take the automobile into the garage and wash it and put it up for the night. That was all that he was instructed or expected to do. He had no authority either express or implied to use the machine for the benefit of another employee, or for his own convenience in going to get his supper. His use of the automobile from the time he left the Bradford street garage and during the whole circuit that he made from that point to Potter's avenue, and from there to the restaurant on Westminster street, and from there back to the Bradford street garage, was unauthorized and beyond the scope of his employment. The case falls within a very distinct and important line of cases in this country, the principles of which are well set forth in *Steffen* v. *McNaughton,* 142 Wis. 49 (1910), where it appeared that on July 3, 1907, plaintiff's intestate was struck and killed by an automobile belonging to defendant and operated by his chauffeur.

At the time of the accident the chauffeur was alone in the automobile and was going to his home for dinner. Under the contract of employment the defendant did not furnish the chauffeur with his meals and the chauffeur went to his home for them. During the chauffeur's employment by the defendant of about two months he had taken the machine to a shop for repairs and he had taken and used it to go to dinner, perhaps ten times. He had not been directed by his employer to use the machine for this purpose and he had never obtained permission so to use it. The defendant testified that he did not see the chauffeur so use the machine and that he did not know that he so used it.

(2)   The trial court directed a verdict for the defendant, which was affirmed. Two questions arise: First: "Is an automobile *per se* a dangerous machine?" Second: "Was the chauffeur acting within the scope of his employment while driving the car at the time of the accident?"

"Upon the first inquiry we discover nothing in the construction, operation and use of the automobile requiring that it be placed in the category with a locomotive, ferocious

animals, dynamite and other dangerous contrivances, and agencies. When properly handled and used, automobiles are as readily and effectually regulated and controlled as other vehicles in common use, and when so used they are reasonably free from dangers. The dangers incident to their use as motor vehicles are commonly the result of the negligent and reckless conduct of those in charge of and operating them, and do not inhere in the construction and use of the vehicles. It is well known that they are being devoted to and used for the purposes of traffic and as conveyances for the pleasure and convenience of all classes of persons and without menace to the safety of those using them or to others upon the same highway when they are operated with reasonable care. The defendant cannot therefore be held liable upon the ground that the automobile is a dangerous contrivance." (Citing cases). . . .

"The conditions of the contract of employment, under which the chauffeur was to provide himself with meals, carried with it the further condition that he was to have the required time at noon day, and might leave the service for such period of time as was required under the circumstances for this personal and private purpose. While he was so engaged his employment and the relation of master and servant were suspended for the time being, unless the facts of the case show that the defendant consented to the chauffeur availing himself of this use of the machine to facilitate his labor and service and in furtherance of the defendant's interests. The evidence will not support this inference. It is reasonably clear and certain that the defendant by his words, acts, and conduct never gave consent or permission to, nor did the contract of employment authorize, such a use of the machine by the servant. The facts and circumstances fail to show that the chauffeur was performing an act in obedience of an order of the defendant or a member of his family, or that he was doing something with the implied consent of the defendant. The law governing the liability of a master for the acts of the servant in this

class of cases is embodied in the following comprehensive statement: 'For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instruction given, and the circumstances under which the act is done, the master is responsible. *Ritchie* v. *Waller*, 63 Conn. 155, 160.' "

Again, the same general principles are set forth in *Danforth* v. *Fisher*, 75 N. H. 111 (1908), where the case is stated, as follows: "At five o'clock on the day of the accident McCauley, who was employed by the defendant as a chauffeur, took the automobile from the place where it was kept, drove to the defendant's store, and awaited orders. He was told to get his supper and to be at the New City Hotel with the automobile at a quarter before seven o'clock. After he had eaten supper, instead of taking the car to the hotel, according to the defendant's orders, he drove to West Manchester, a mile or two distant from his boarding place and in an opposite direction from the hotel, for the purpose of calling upon a friend. At the time of the accident he had finished his call and was on his way to the hotel.

"Although the evidence shows that McCauley was the defendant's servant, and that he drove the automobile against the plaintiff's horse and caused the animal to run away; it also shows that he took the automobile without the defendant's permission and went with it on an errand of his own; that he was acting for himself, and not for the defendant at that time. As it cannot be found from the evidence that McCauley was doing what he was employed to do at the time the plaintiff was injured, there was no error in the order of non-suit." . . . (p. 112). "The defendant is not liable merely because he was the owner of the automobile by which the plaintiff was injured. If the legislature can enact that an automobile or its owner shall

be liable for any injury the driver may do to others wherever the driver would be, it has not seen fit to do so.   Nor is there any force in the plaintiff's contention that the owner of an automobile is liable to strangers in the same way and to the same extent he would be if it were a wild animal."
. . .   "There is nothing inherently dangerous about an automobile, any more than about an axe.   Both are harmless so long as no one attempts to use them, and both are likely to injure those who come in contact with them when they are used for the purpose for which they were intended."

The case was followed in *Howe* v. *Leighton*, 75 Atl. Rep. (N. H.) 102 (1910), where it was held that the owner of an automobile is not liable for injuries caused by his chauffeur's negligence while riding for his own pleasure and not upon the owner's business.   See, also, to the same general effect: *Jones* v. *Hoge*, 47 Wash. 663; *Lewis* v. *Amorous*, 3 Ga. App., 50; *McIntire* v. *Hartfelder-Gurbutt Co.*, 71 S. E. (Ga.) 492; *Slater* v. *Advance Thresher Co.*, 97 Minn. 305; *Reynolds* v. *Buck*, 127 Iowa, 601; *Doran* v. *Thomsen*, 74 N. J. L. 445, 76 N. J. L. 754; *Daily* v. *Maxwell*, 133 S. W. (Mo.) 351; *Evans* v. *Dyke Auto Co.* 121 Mo. App. 266; *Patterson* v. *Kates*, 152 Fed. 481; *Stewart* v. *Baruch*, 103 App. Div. (N. Y.) 577; *Clark* v. *Buckmobile Co.* 107 App. Div. (N. Y.) 120; *Cunningham* v. *Castle*, 127 App. Div. (N. Y.) 580; *Vincent* v. *Crandall*, 131 App. Div. (N. Y.) 200; *Douglass* v. *Hewson*, 142 App. Div. (N. Y.) 166; *Fleischner* v. *Durgin*, 207 Mass. 435; *McCarthy* v. *Timmins*, 178 Mass. 378; *Mitchell* v. *Crassweller*, 13 C. B. 235; *Storey* v. *Ashton*, 4 L. R. Q. B. 476; Huddy, Automobiles, 2d ed. Ch. III, § 2; Berry, Law of Automobiles, § 20, § 145; Babbitt, Law of Motor Vehicles, § 577; Davids, Do, §§ 13, 14, §§ 212, 213, 216, 217.   The same general rule has been recognized in Rhode Island, in the case of *Campbell* v. *City of Providence*, 9 R. I. 262.

(3)   We find no provision in our statute, Chapter 86, General Laws, 1909, relating to motor vehicles, which in any way changes the rules of law affecting the civil responsibility

of the owner with respect to the acts of his servant outside the scope of his employment.

In Massachusetts, under a statute similar to ours in its general provisions, the court had occasion to consider this question, in the case of *Trombley* v. *Stevens-Duryea Co.*, 206 Mass. 516 (1910). Plaintiff's horse became frightened and ran away by reason of the negligent way in which an automobile belonging to the defendant was driven. There was no evidence connecting the defendant with the accident, except as to the number of the registration tag on the automobile and the certificate of registration of that number showing that the automobile was registered in the name of the defendant. Held that there was evidence connecting the defendant with the ownership of the car. It could not be operated lawfully upon the highways unless it were registered by the owner or person in control and until rebutted the plaintiff could rely on the presumption that the requirements of the statute had been followed. The court says, at page 519: "But to recover, the plaintiff also was required to offer some evidence of the defendant's responsibility for the driver's negligence. The legislature might have said that whenever a registered automobile was operated on the public ways, the person, firm or corporation named in the certificate should be liable *prima facie* to other travelers for accidents caused by its mismanagement. The statute, however, goes no further than to provide, that for the purposes of the issuance, transfer and revocation of certificates and the enforcement of the penal provisions of the act, automobiles shall be identified by their register number, and their owner or owners ascertained from the certificate. The common law, therefore, controls, and there is no presumption from his mere physical possession, that the person operating the automobile was the servant or agent of the corporation. He may have hired or borrowed it or wrongfully appropriated it to his own use, and in neither event would the defendant be chargeable with his misconduct." . . .

*Frank L. Hanley*, for plaintiff.

*Frank T. Easton*, for defendant.