Thomas C. Kernan *vs.* C. F. Webb.

Helen Kernan *vs.* Same.

DECEMBER 19, 1929.

Present: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

Stearns, C. J. These are two actions for negligence brought by Thomas C. Kernan and his wife to recover for damages suffered by them in an automobile accident which occurred on a public highway in the town of Warwick, on the night of February 2, 1928. The actions were tried together, resulted in a verdict for each plaintiff, and are now here on bills of exceptions in which the only exception is to the refusal of the trial justice to direct a verdict for the defendant.

In each declaration plaintiff alleges that defendant, his servant and agent, did negligently operate defendant's automobile, thereby causing the damages for which suit is brought. Defendant was called as a witness by plaintiffs. He testified that he was the owner of the automobile which collided with the automobile in which Mr. and Mrs. Kernan were riding; he denied that he had given anyone permission to operate or use his automobile in Rhode Island on the evening of the accident. The deposition of Miss Young, a resident of Roxbury, Mass., taken by the defendant in Boston a few days before the trial, was read by plaintiff's counsel to the jury. Miss Young testified that she was using defendant's car on the night in question; with her were a chauffeur she had employed to drive the car, his mother, and a Mr. Penney; that she did not know where any of them could be found; that the last time she had seen any of them was a week after the accident; that she did not have defendant's permission to use the car on the night in question or at any time outside the limits of Massachusetts. Defendant did not dispute the negligence of the driver of his automobile.

The main issue was whether or not defendant's automobile was operated at the time of the accident with the consent of the defendant within the purview of the statute, Chapter 1040, Section 3, Public Laws 1927. Said section is as follows: "Whenever any motor vehicle shall be used or operated upon any public highway of this state with the consent of the owner or lessee or bailee thereof, express or implied, or under any agreement with such owner or lessee or bailee, express or implied, the operator thereof, if other than such owner, shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the agent of such lessee and of such bailee. The provisions of this section shall apply only to accidents which occur subsequent to the time when this act goes into effect."

The first question is, was there any evidence that the use of the automobile at the time of the accident was with the

consent, express or implied, of the defendant owner? On a motion to direct a verdict the question of the weight of the evidence is immaterial and irrelevant. If there was any evidence of defendant's consent to the use of his car in this State, a question of fact was raised which should have been submitted to the jury. The weight of any such evidence could be properly determined only after a verdict. Defendant is a married man. He has a summer home in Duxbury and a winter home in Boston where he is engaged in business. Miss Young is a registered nurse. She lives with her mother in the Roxbury district of Boston. For a long time she has been an intimate friend of the defendant. She is not acquainted with his wife. Defendant was in the habit of leaving his automobile at Miss Young's house in the morning on his way to his office and thence proceeding into the city on the elevated railway. Miss Young used the automobile often and occasionally kept it in her own garage. Defendant says she was a good driver, in fact better than he was. Defendant admits that she had his permission to use the car in the State of Massachusetts within the limit of fifty miles from Boston. He testified that he always forbade Miss Young to use the car at night or beyond the limit of fifty miles from Boston. At one time he said she had permission to use the car only in Boston at a speed not to exceed fifty miles an hour. Later he changed this testimony. On Monday of the week of the accident, defendant and Miss Young had luncheon together in Boston; that evening he left Boston for a short business trip of four or five days. He says he left the car in his garage. She says it was left at her home and that she kept the car that week in her own garage. On the Thursday following (Feb. 2), Miss Young and her companions left Boston at four o'clock in the afternoon intending, she says, to drive through to New Jersey that night. After the collision with the Kernan automobile, Miss Young, in answer to questions, stated that she had the car registration with her; that she was Mrs. Webb; that the automobile was in her care and she was responsible for it.

Further details of the testimony are unnecessary. Defendant and Miss Young were interested witnesses. Their testimony was so contradictory and inconsistent that neither judge nor jury was bound to accept it as wholly true. The trial justice evidently did not believe it, nor was he bound to do so. A trial justice should not direct a verdict on testimony which he does not believe. *McIver* v. *Schwartz,* 50 R. I. 68.

Considering all the evidence and the testimony on the question of consent it is a fair conclusion that Miss Young was using the car with defendant's consent, if not express at least implied. The intimacy between defendant and Miss Young, if innocent, was somewhat unusual. She falsely claimed to be Mrs. Webb and the inference is not unwarranted that their intimacy was not innocent. The nature of their intimacy is unimportant except in so far as it has a bearing on the reasonableness of the testimony with respect to the restriction of the right to use the automobile. Whatever the truth may be, there is sufficient evidence to sustain a finding that her authority to use the automobile was not limited, as was claimed. At the taking of her deposition Miss Young refused to come into this State to testify at the approaching trial. Her reason was that she did not want to. It is true she was not under any legal obligation to do so, but her attitude thus expressed throws some light on her testimony given by deposition. Granting that defendant perhaps preferred she should not take long drives in his automobile, the conclusion may still fairly be reached that she had a general permission to use it. The limit of fifty miles driving from Boston would allow a drive across the border of Massachusetts into this State. Considering the location and time of the accident, it is not at all certain that Miss Young was actually on the way to New Jersey.

Assuming that there was no restriction of the consent by the owner, it is argued that the Rhode Island statute (C. 1040, s. 3) can not legally be applicable where the consent to the use of a motor vehicle is given in a foreign state.

In the interpretation of a new statute the old and the new laws must be considered together to ascertain the legislative intent. Before the enactment of Chapter 1040, in 1927, the owner of an automobile was not liable for damage caused by a person while driving for his own pleasure and not on the owner's business, or by a servant or agent acting outside the scope of his employment or of his agency. *Colwell* v. *Aetna Bottle & Stopper Co.*, 33 R. I. 531. Chapter 1258, Section 12, Public Laws, 1915, provides that any person who shall operate or use any motor vehicle without the owner's consent shall be punished by fine or by imprisonment or both. This statute by its terms does not apply when the motor vehicle is taken with the intent to steal, or under a claim of right. Since the enactment of Chapter 1040, with the exception of taking by theft or under claim of right, the use of a motor vehicle by one who is not the owner or legal possessor, is in contemplation of law, either with, or without the consent of the owner. The use without consent is a criminal offence and is made such, to some extent certainly, for the protection of the owner. If the use is with consent, the intent of the statute is to secure greater protection to the public from the operation of motor vehicles unfit for use or when negligently driven. The statute in question enlarges the legal liability of the owner who intrusts his motor vehicle to another with the privilege of using it. The language of the act is the operator "shall be deemed to be the agent of the owner," in other words, shall be considered as and judged to be the agent. The operator is not thereby made the agent of the owner with all of the incidents of the law of principal and agent. If, at the time of the accident, the operator is in fact an agent of the owner, the latter is liable at common law. The statute is intended to be operative and to impose a liability when there is an accident and there is no existing agency. The foundation of this statutory liability of the owner is the permission given to another to use an instrumentality which, if improperly used, is a danger and a menace to the public.

The owner can avoid this liability by refusing to permit the use of his automobile by another. If he does permit such use, he can not avoid the consequences of the operator's negligence and escape liability therefor by secret restrictions of the right to use the motor vehicle. The statute has no extraterritorial effect. It does not come into operation until an accident happens on a public highway in this State. The question then arises, was the use in this State with the consent of the owner? If it was, the owner is liable. The question is one of fact for the jury unless there is no evidence at all to show consent. *Guerin* v. *Mongeon*, 49 R. I. 414. For the defence it is argued that even if the consent of the owner was given in Massachusetts with no restriction whatever, the defendant owner has done no act, has made no bailment or contract within the limits of this State upon which the Rhode Island statute can operate as a basis; that the defendant, whom plaintiff seeks to hold liable for the wrongful act of some other person, was not the principal under the law of principal and agent in Massachusetts, and consequently such relationship can not be created by the mere crossing by the automobile of the State line. The statute does not attempt to change the relation of the owner and operator, either within or without the limits of this State. The question of the owner's consent is to be determined by the jury upon consideration of all of the evidence as to the existence of such consent when the motor vehicle comes into this state and an accident has occurred. The inquiry is not one of agency in another state, but whether the consent to use given in one state is a continuing consent for the use in this State. A foreign car is permitted to be used in this State for a limited time only, under the so-called comity clause of the statutes. The power of the legislature to make the owner responsible for any damage caused in this State by his automobile, whether operated by himself or with his consent, is undoubted and is necessary for the effective use of the police power. No discrimination is made by the statute between citizens of

this State and those of other states. Nor is the statute, in our judgment, unreasonable. The enormous increase in recent years of fatalities and serious injuries caused by automobiles, requires a drastic regulation of their use for the safety of.the public. The enlargement by the statute of the liability of the owner for the negligent use of his motor vehicle should result in lessening the number of accidents. The financial loss caused by negligent use, it is now intended, shall be borne by the owner of the automobile, not, as often heretofore, by the innocent victim of an accident. There was no error in the refusal to direct a verdict for the defendant.

The exception of the defendant in each case is overruled, and each case is remitted to the Superior Court for entry of judgment on the verdict.

*Quinn, Kernan & Quinn, Michael De Ciantis,* for plaintiffs.
*Sherwood, Heltzen & Clifford,* for defendant.
*Ralph T. Barnefield, amicus curiae.*