Paul E. OSTROSKY, Plaintiff, Appellee,

v.

Randy A. SCZAPA,
Defendant, Appellant.

Paul E. OSTROSKY, Plaintiff, Appellee,

v.

Randy A. SCZAPA,
Defendant, Appellee.

Appeal of SAYBROOK FORD,
INC., Defendant.

Nos. 88–1711, 88–1712.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1989.

Decided Feb. 10, 1989.

Raymond A. LaFazia with whom Gunning, LaFazia & Gnys, Inc., Providence, R.I., was on brief, for Saybrook Ford, Inc.

V. James Santaniello, Providence, R.I., for Randy A. Sczapa.

Karen L. Davidson with whom Aram R. Schefrin and Lovett, Schefrin, Gallogly & Harnett, Providence, R.I., were on brief, for Paul E. Ostrosky.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

On a clear day, proceeding north on a straight stretch of road some quarter of a mile long, a Ford car operated by defendant Randy Sczapa (Randy) struck the left front end of plaintiff Paul Ostrosky's car, headed south. Other than a car driven by plaintiff's girl friend, stopped some dis-

tance behind him, there was no other traffic. Plaintiff testified that he had stopped for an appreciable interval, his left front end just over the yellow double center line, awaiting the dispersal of a meandering covey of ducks. He saw the Ford careening at, he estimated, over 70 m.p.h. and when it appeared headed directly toward him there was no time to move. According to Randy, he was driving at 40 m.p.h., on his own side of the road, but plaintiff pulled in front of him and he could not stop. According to Randy's brother David, formerly the driver, but then a passenger, they were proceeding at 50 to 55 m.p.h. The speed limit was 35 m.p.h. The police plan showed the Ford's tire marks some 140 feet long. The jury found for plaintiff, and Randy appeals.

■ Randy's substantial complaint below, and the principal one here, is that evidence of his being intoxicated should have been excluded, pursuant to Fed.R. Evid. 403, as of "relatively low probative value compared to its likely prejudicial effect." Passing Randy's heavy burden resulting from the fact that application of this rule is in the broad discretion of the district court, we can only think that we might have reversed even that discretion had the court exercised it the other way. Undoubtedly the evidence as to intoxication (much stronger than Randy would have it) was "prejudicial" to his case, but it was fairly so. As suggesting that Randy was out of control, it supported plaintiff's testimony that he, plaintiff, was only slightly over the line. Moreover, even if the jury believed that, in order to circumvent the ducks, plaintiff had gone well into the northbound lane, intoxication still would aid a finding that the real cause of the accident was Randy's speeding and inattention.

Correspondingly, the court's denial of Randy's motion for a new trial because of that alleged error and the jury's consequent failure to reduce damages for comparative fault, was, as pointed out by the court, clearly correct. This appeal is totally frivolous. It seems incredible that counsel should base an appeal, to the necessary point of claiming an abuse of discretion, by

claiming error because there was "ample evidence for a determination of the real issue: liability. The bare-boned testimony as to drinking and intoxication had very little probative value concerning the due care of the respective drivers, if any at all, and that value was *grossly* outweighed by its unfairly prejudicial effect." (Emphasis in original.)

Double costs are assessed against Randy, and a $1,000 token attorney fee is to be paid by Randy's counsel personally. Whatever may be the wishes of his client, counsel owes a duty to the court, and to opposing parties, not to engage in totally ungrounded conduct. *United States v. Nesglo, Inc.*, 744 F.2d 887, 892 (1st Cir.1984); Fed.R.App.P. 38.

■ In a second action, tried concurrently, plaintiff sues Saybrook Ford, Inc., hereinafter Saybrook, the employer of Randy's brother David as a salesman, and the owner of the Ford. Saybrook contends that, particularly with the Ford being driven by Randy, a stranger to it, it is not responsible. Plaintiff makes two replies: R.I. Gen.Laws § 31–33–6, and § 31–33–7. The latter of these provisions creates a presumption that an automobile involved in an accident was being operated with the consent of the registered owner. There are, however, two obstacles. Rhode Island limits the use of this statute to plaintiffs who plead it. *Martin v. Lilly*, 505 A.2d 1156, 1160 (R.I.1986). Plaintiff did not plead it. But even if the reason for this requirement be disregarded as merely procedural, this statute has to do with Rhode Island internal matters, and the Ford was not registered in Rhode Island. All that appeared was that it had dealer's plates. Plaintiff's case to the effect that appending dealer's plates on a car is equivalent to registration for the purpose of this statute, *Avedesian v. Butler Auto Sales, Inc.*, 93 R.I. 4, 14–15, 170 A.2d 604, 609 (1961), does not assist plaintiff. The Ford's dealer plates were Connecticut.

Section 31–33–6 presents a further problem for plaintiff, though not insuperable. This section provides,

Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the driver thereof, if other than such owner, or lessee, or bailee, shall in case of accident be deemed to be the agent of the owner, or lessee, or bailee, of such motor vehicle....

The Rhode Island court has construed this statute broadly, to cover an authorized agent's driving outside the scope of his conferred authority. *Baker v. Rhode Island Ice Co.*, 72 R.I. 262, 268, 50 A.2d 618, 621 (1946). Furthermore, the agent may be implicitly authorized, in light of the statute's intended broad purpose, to authorize another person to drive, *F.D. McKendall Lumber Co. v. Ramieri*, 85 R.I. 92, 96, 126 A.2d 560, 562 (1956), the court noting, as it had in *Baker*, that the statute abrogated certain common law defenses with respect to an agent's authority.

Thus plaintiff would have a clear case against Saybrook, except for one possible flaw. By its terms Saybrook, as owner or bailee, cannot be brought under § 31–33–6 unless it appears that it had consented to the car's being driven in Rhode Island. *Kernan v. Webb*, 50 R.I. 394, 148 A. 186 (1929). There the facts were that defendant, a Massachusetts resident, occasionally loaned his car to a woman friend, a Miss Young, also of Massachusetts. At a time when he was away, having left the car with Young, she drove to Rhode Island, where she struck the plaintiff. Her testimony was to the effect that she was permitted to take short excursions, only, and not to go outside Massachusetts. The court held that if this were the fact, the statute would not apply, but it permitted a jury verdict to stand, saying that the evidence warranted an inference that her permission to use was broad enough to include Rhode Island.

The Rhode Island court's full analysis was that, absent the statute, if the driver was the owner's agent, the owner would be liable or not, depending upon common law principles, but under the statute the owner would be liable even if the agent had exceeded his authority if the owner had consented to Rhode Island driving. "The inquiry is not [simply] one of agency in another state, but [alternatively] whether the consent to use given in one state is a continuing consent for the use in this state." 50 R.I. at 399, 148 A. at 189. Thus we have two questions, both to be judged by Connecticut law, since the entrusting occurred in that state. However, as we have been given no Connecticut law, we look to the Rhode Island common law, *Potemkin v. Leach*, 65 R.I. 1, 8, 13 A.2d 250, 254 (1940), and apply it to the evidence as gathered from various parts of the record. We do not, absent a showing of defendant's consent, look to the Rhode Island statute, an error in which the district court persisted in spite of extensive argument by Saybrook, although, we remark, without aiding the court, or us, by calling attention to *Kernan v. Webb* and its clear language. Particularly by the time a case involving several hundred thousand dollars is on appeal it should not be for the court to do counsel's work for him.

Dealing first with agency, it appears that David, as a Saybrook salesman, had been given the use of the Ford. This does not mean that in David's every use he was Saybrook's authorized agent, so as to invoke the doctrine of respondeat superior. The test is whether the operation was intended for, or, at least, in part for, Saybrook's benefit. If, as the court put it in *Colwell v. Aetna Bottle & Stopper Co.*, 33 R.I. 531, 535, 82 A. 388 (1912),[1] he was on his own private business, Saybrook would not be responsible.

On the day in question, Thanksgiving, David and his brother Randy had driven to a Rhode Island race track (and, according to Randy, became lost and reached the wrong one); started "breakfast" with Bloody Marys; bet very successfully, and celebrated; got lost on the way home, and, at the time of the accident, were driving north, instead of south. Unless affected

---

1. While *Colwell* is an old case, it has been more recently recognized, *see Aldcroft v. Prudential Ins. Co.*, 104 R.I. 240, 245, 243 A.2d 115 (1968), and is not aberrational.

by the following testimony, this trip was clearly not undertaken for Saybrook's benefit. David testified, in response to questioning by plaintiff, that after 15 minutes on their way home from the track Randy took over the driving.

Q. You were lost ... and is that why your brother took over?

A. Yeah, because he's a truck driver and he's supposed to be better.

Q. Better at what?

A. Finding his way in driving.

. . . .

Q. Now, had your brother ever driven that car ... [p]rior to his driving it on Thanksgiving Day when he was in the accident?

A. No.

Q. So you were just letting him drive it for a test drive, is that fair to say?

A. (Over defendant's objection) He was in the market for a new car. I was lost. I didn't want to drive; he drove.

On direct examination by his counsel, Randy testified,

Q. What was the reason for your driving?

A. I was a little familiar with the area from the job I was working.

Asked by defendant Saybrook,

Q. [I]t was decided that you would drive because you were more familiar with Rhode Island?

A. Yes.

Q. You were not test-driving that car, were you?

A. I was in the market for a new car which I purchased two months later.

On cross-examination by plaintiff,

Q. [Y]ou and he decided to switch drivers?

A. Yes.

Q. Whose idea was it, yours or David's?

A. Well, my brother asked me if I was familiar with the area and I said yes.

. . . .

Q. It was because he was lost?

A. Yes.

Q. You were lost, too, weren't you?

A. Yes, I was, but I knew the area a little bit.

Quite apart from turning the car over to his brother, who the evidence (though contradicted) abundantly showed to be intoxicated, this was a most singular test drive. This court is committed to the proposition that the record as a whole is to be examined in connection with a directed verdict, and that more than a scintilla of evidence is needed to avoid it. *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 697 (1st Cir.1981); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To find on this record that David was acting within his scope of authority as a salesman in having Randy drive would be a miscarriage of justice.[2] At best, David was in real trouble with his employer, and this was a conspicuously trumped-up story in an attempt to justify his conduct. A finding holding Saybrook as principal was not warranted. *Cf. Croes v. United States*, 726 F.2d 31, 32 (1st Cir.1984) (conduct was "too little actuated by a purpose to serve the master," quoting Restatement (Second) of Agency, § 228(2) (1958)).

■ On the separate matter of Saybrook's having consented to David's driving in Rhode Island we have a different question. The burden being on plaintiff to prove consent, and, as we read the record, having quite possibly failed to do so, it might be urged that we should consider directing a verdict for Saybrook n.o.v. If correct, this would be unfair to plaintiff, because the court led him to do nothing on consent by its improper ruling that § 31–33–6 already applied. On the other hand, if the record shows sufficient evidence of consent, and we let the verdict stand, this would be unfair to Saybrook, who the court prevented from introducing testimony that consent had been expressly

---

**2.** So, too, was it unfair of the court to take advantage of what was an obvious oversight of counsel, in preparing an answer to an interrogatory, in failing to notice a subsidiary assumption in the interrogatory directed to another matter. The assumption was contrary to Saybrook's entire defense, and the failure to see a significance an obvious mistake.

refused. Consequently, either way, the verdict and judgment in favor of plaintiff against Saybrook must be set aside, and a new trial ordered, restricted to the applicability of R.I.Gen.Laws § 31–33–6.

In the case against Saybrook Ford, Inc., so ordered. In the case against Randy Sczapa, judgment affirmed.