**Paul OSTROSKY**

v.

**Randy A. SCZAPA, Alias John Doe and Saybrook Ford, Inc.**

**Civ. A. No. 87–0235–T.**

United States District Court, D. Rhode Island.

July 12, 1990.

Karen Davidson, Providence, R.I., for plaintiff.

Raymond Lafazia, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is a personal injury suit that arises out of a collision between two automobiles. The only issue is whether the vehicle driven by Randy A. Sczapa ("Randy") was being operated with the consent of its owner, Saybrook Ford, Inc. ("Saybrook"), within the meaning of R.I.Gen.Laws § 31–33–6 (1956) (1982 Restatement).

### I.  FACTS

This case was previously tried before another judge of this Court sitting with a jury which attributed the collision in question entirely to negligence on the part of Randy.  Accordingly, judgment was entered against both Randy and Saybrook, as the owner of the vehicle Randy was driving.  On appeal, the First Circuit affirmed the judgment against Randy.  However, it remanded the case for the sole purpose of determining the applicability of R.I.Gen. Laws § 31–33–6 upon which Saybrook's liability hinges. *See Ostrosky v. Sczapa*, 868 F.2d 1 (1st Cir.1989).

On remand, the parties waived trial and submitted an "Agreed Statement of Facts" which is as follows.  In November of 1984, Randy's brother, David Sczapa ("David"), was an automobile salesman at Saybrook Ford which is located in Old Saybrook, Connecticut.  Saybrook owned a number of unregistered demonstrator vehicles bearing dealer's license plates.  It allowed certain salesmen to drive those vehicles both as a reward for their performance and as a form of advertising.  It also permitted prospective buyers to test drive those vehicles

but only after management approval was obtained. One step in the approval process was an assessment of the customer's ability to finance the purchase and the depth of his interest in the particular vehicle. In any event, company policy prohibited the operation of demonstrators outside of Connecticut without prior permission or notification. Company policy also made operating one of those vehicles while intoxicated grounds for immediate dismissal.

On the day before Thanksgiving, David took possession of one of the demonstrator vehicles.[1] The following day, accompanied by Randy, he drove it to a dog track in Lincoln, Rhode Island for a day of gambling. According to David, he did not inform Saybrook of his plans because it was a holiday, and he did not know the home addresses of any of the management personnel. While at the track, both David and Randy consumed a number of alcoholic beverages. By the time they left, David was not feeling well and delegated the driving to Randy. Unfortunately, the libations had impaired Randy's driving skills, and he struck a vehicle operated by Paul Ostrosky thereby precipitating this suit.[2]

## II. DISCUSSION

As previously noted, the sole issue is whether R.I.Gen.Laws § 31–33–6 renders Saybrook vicariously liable for Randy's negligence. That section states:

> Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the driver thereof, if other than such owner, or lessee, or bailee, shall in case of accident be deemed to be the agent of the owner, or lessee, or bailee, of such motor vehicle....

R.I.Gen.Laws § 31–33–6.

■ The statute abrogates the common law rule that shielded an automobile owner from liability for the negligence of a person to whom the vehicle was entrusted unless such negligence occurred while the operator was engaged in the owner's business. It predicates the owner's liability on the granting of permission to use a potentially dangerous instrumentality. Thus, an owner remains liable at common law for acts committed within the scope of the operator's agency but, in addition, incurs liability under the statute irrespective of whether the acts are committed within or outside the scope of that agency. *Baker v. Rhode Island Ice Co.*, 72 R.I. 262, 268, 50 A.2d 618, 621 (1946); *Kernan v. Webb*, 50 R.I. 394, 398–99, 148 A. 186 (1929). Secret restrictions on the operator's use of the vehicle will not insulate the owner from responsibility. *Baker*, 72 R.I. at 266, 50 A.2d at 620; *Kernan*, 50 R.I. at 399, 148 A. at 188. However, the statute does not apply unless the owner consented to operation of the vehicle in Rhode Island. *Kernan*, 50 R.I. at 399, 148 A. at 188.

■ In this case, there is no evidence that Saybrook consented to Randy's operation of the company's car or that it consented to the car being operated in Rhode Island. On the contrary, the Agreed Statement of Facts indicates that the operation of demonstrators by third parties was prohibited unless they were bona fide prospective purchasers *and* the company's permission was obtained. It does quote David as saying that Randy was interested in possibly purchasing the vehicle and was test driving it. However, under the circumstances, that statement borders on the preposterous. No reason is offered as to why the vehicle was taken all the way to Rhode Island so that Randy could test drive it or why Randy did not begin his test drive until after the brothers left the track. A more plausible explanation is contained in

---

1. The basis upon which he did so is unclear. Only salesmen who had sold ten or more cars were allowed to use demonstrators and there is no evidence that David had satisfied that requirement. Indeed, the evidence discloses that he began his employment as a trainee less than a month earlier.

2. A blood test administered shortly after the accident revealed Randy's blood alcohol level to be .235 which is considerably above the legal standard for intoxication.

the comments David made shortly after the accident to John May, Saybrook's general manager. He stated that Randy drove because he (David) had been drinking and did not feel well.

Even if Randy was acting pursuant to a genuine interest in purchasing the vehicle, there is nothing to indicate that Saybrook had approved his "test drive." There is not even any showing that the information regarding Randy's financial condition which the company required as part of its approval process had been submitted. Given Saybrook's policy prohibiting third persons from operating its vehicles without company permission and the absence of evidence that such permission was obtained, the only reasonable inference to be drawn is that Randy was driving without Saybrook's consent.

Equally significant is the dearth of any proof that Saybrook gave its permission for the vehicle to be driven outside of Connecticut. In fact, as previously noted, David conceded that he did not even request such permission because it was a holiday and he did not know how to reach any of the managers at home. Once again, in the face of a company policy requiring such permission, the inescapable conclusion is that the vehicle was being operated in Rhode Island without Saybrook's consent.

In short, the Agreed Statement of Facts demonstrates that Saybrook had established policies prohibiting third parties from driving its demonstrators and barring their operation outside of Connecticut without prior approval. Furthermore, it contains no evidence that any such approval was obtained. For those reasons, the Court finds that Randy did not have Saybrook's consent to operate the vehicle in question, and more particularly, he did not have Saybrook's consent to operate it in Rhode Island.

Accordingly, the Court directs the clerk to enter judgment for the defendant Saybrook Ford, Inc.

IT IS SO ORDERED.